## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TK HOLDINGS INC. *et al.,* | ) | Case No. 17-11375 (BLS) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | |
| TK HOLDINGS INC. *et al.,* | ) | Adv. No. 17-50880 (BLS) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -against- | ) | |
| | ) | |
| STATE OF HAWAI'I by its Office of | ) | |
| Consumer Protection, GOVERNMENT OF | ) | |
| THE UNITED STATES VIRGIN ISLANDS, | ) | |
| STATE OF NEW MEXICO *ex rel.* HECTOR | ) | |
| BALDERAS, Attorney General *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWERING BRIEF OF DEFENDANTS STATE OF HAWAI'I, GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS AND STATE OF NEW MEXICO IN OPPOSITION TO DEBTORS' <u>MOTION FOR A PRELIMINARY INJUNCTION</u>

Thomas G. Macauley (No. 3411)
Macauley LLC
300 Delaware Avenue, Suite 760
Wilmington, DE 19801
Telephone: (302) 656-0100
Facsimile: (302) 654-4362

Attorneys for State of Hawai'i
and the Government of the
United States Virgin Islands

Adam J. Levitt, Esquire
DiCello Levitt & Casey LLC
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
Email: alevitt@dlcfirm.com

Attorneys for the State of New Mexico

Dated: August 2, 2017

# TABLE OF CONTENTS

**PAGE**

NATURE AND STAGE OF THE PROCEEDING................................................................1

SUMMARY OF ARGUMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

A.  Vehicles in the HAH Region Are Top Priority. .........................................................2

B.  The State Actions. ....................................................................................................3

    1.  The Two Hawai'i Actions.....................................................................................3

        a.    The First HI Action. ....................................................................................4

        b.    The Second HI Action. ...............................................................................5

    2.  The Two USVI Actions. ........................................................................................6

        a.    The First USVI Action..................................................................................6

        b.    The Second USVI Action. ...........................................................................8

    3.  The New Mexico Action.......................................................................................8

ARGUMENT ..................................................................................................................9

I.  The Debtors Cannot Satisfy the Standard To Enjoin Actions Against TKH That Are Exempt from the Automatic Stay. ................................................11

    A.  The State Actions Are Exempt from the Automatic Stay..............................................11

    B.  Any Injunction of Exempt State Action Must Clear a Very High Hurdle...................15

    C.  Section 105 Cannot Be Used To Halt Exempt State Actions. ......................................18

II.  The Debtors Fail To Satisfy Any of the Four Elements for an Injunction. .........................20

    A.  The Debtors Cannot Show Irreparable Harm. ............................................................20

    B.  The Debtors Cannot Satisfy the Appropriate Likelihood of Success on the Merits Inquiry.......................................................................................22

    C.  The Equities Favor the States. ...................................................................................23

    D.  The Public Interest Favors Enforcement of The States' Police Power. ......................25

III.  There Is No Basis To Enjoin the State Actions Against the Non-Debtors. .........................26

    A.  There Is No Legal Basis for a Non-Debtor Injunction. ...............................................26

    B.  The Consenting OEMs Do Not Share an Identity of Interest with TKH. ...................28

    C.  An Injunction In Favor of the Non-Debtors Does Not Satisfy the
       Four Necessary Elements for an Injunction. ...............................................................29

JOINDER IN OTHER ARGUMENTS .......................................................................................29

CONCLUSION.............................................................................................................................30

# TABLE OF AUTHORITIES

**PAGE**

## DECISION

*A.H. Robbins Co. v. Piccinin,*
   788 F.2d 994 (4th Cir. 1986) ...........................................................29

*Carl Kelley Constr. LLC v. Danco Techs.,*
   656 F. Supp. 2d 1323 (D.N.M. 2009) ...............................................14

*City and County of San Francisco v. PG & E Corp.,*
   433 F.3d 1115 (9th Cir. 2006......................................................12, 15

*Dixon v. Love,*
   431 U.S. 105 (1977)...........................................................................25

*Dole v. Hansbrough,*
   113 B.R. 96 (D.D.C. 1990) ..............................................................21

*EEOC v. Rath Packing Co.,*
   787 F.2d 318 (8th Cir. 1986) ...........................................................21

*In re 1820-1838 Amsterdam Equities, Inc.,*
   191 B.R. 18 (S.D.N.Y. 1996)............................................................18

*In re Bankruptcy Appeal of Allegheny Health, Educ. and Research Found.,*
   252 B.R. 309 (W.D. Pa. 1999)..........................................................18

*In re Berg,*
   230 F.3d 1165 (9th Cir. 2000)..........................................................11

*In re Brennan,*
   198 B.R. 445 (D.N.J. 1996) ..............................................16, 17, 21, 25, 27

*In re Commonwealth Oil Refining Co.,*
   805 F.2d 1175 (5th Cir. 1986) .....................................................18, 23

*In re Compton,*
   90 B.R. 798 (N.D. Tex. 1988)..........................................................18

*In re Fibertower Network Serv. Corp.,*
   482 B.R. 169 (Bankr. N.D. Tex. 2012).............................................16

*In re First Alliance Mortg. Corp.,*
   264 B.R. 634 (C.D. Cal. 2001) ...............................13, 15, 16, 18, 19, 22, 24, 28

*In re GM LLC Ignition Switch Litig.*
   69 F. Supp. 3d 404 (S.D.N.Y. 2014)...........................................................................12, 15

*In re Neuman,*
   71 B.R. 567 (S.D.N.Y. 1987)....................................................................................16

*In re Nortel Networks, Inc.,*
   669 F.3d 128 (3d Cir. 2011).................................................................................11, 12

*In re Security Gas & Oil, Inc.,*
   70 B.R. 786 (Bankr. N.D. Cal. 1987) ..........................................................................18

*In re STR Corp.,*
   66 B.R. 49 (Bankr. N.D. Ohio 1986)............................................................................18

*In re Teltronics, Ltd.,*
   649 F.2d 1236 (7th Cir. 1981) .................................................................................17

*In re Universal Life Church, Inc.,*
   128 F.3d 1294 (9th Cir. 1997) ..................................................................................13

*In re VF Brands, Inc.,*
   282 B.R. 134 (Bankr. D. Del. 2002) ...........................................................................28

*In re W.R. Grace & Co.,*
   386 B.R. 17 (Bankr. D. Del. 2008) (*W.R. Grace I*) ............................................................29

*In re W.R. Grace & Co.,*
   412 B.R. 657 (D. Del. 2009) (*W.R. Grace II*)..................................................................24

*Law v. Siegel,*
   134 S. Ct. 1188 (2014)...........................................................................................19

*McCartney v. Integra Nat'l Bank N.,*
   106 F.3d 506 (3d Cir. 1997).............................................................................26, 27, 28

*NLRB v. Superior Forwarding, Inc.,*
   762 F.2d 695 (8th Cir. 1985)................................................................................17, 18

*Norwest Bank Worthington v. Ahlers,*
   485 U.S. 197 (1988)..............................................................................................19

*Penn Terra Ltd. v. Department of Envtl. Res.,*
   733 F.2d 267 (3d Cir. 1984).........................................................15, 16, 18, 19, 21, 22

*Safety-Kleen Inc. (Pinewood) v. Wyche,*
    274 F.3d 846 (4th Cir. 2001) ........................................................................12, 13

*Truong v. Allstate Ins. Co.,*
    182 P.3d 814 (N.M. Ct. App. 2008), *rev'd on other grounds,*
    227 P. 3d 73 (N.M. 2010) ...............................................................................14

*United States v. Nicolet, Inc.,*
    F.2d 202 (3d Cir. 1988)..............................................................12, 14, 16, 24

*United States v. Noland,*
    517 U.S. 535 (1996)........................................................................................19

*Zanakis-Pico v. Cutter Dodge, Inc.,*
    47 P.3d 1222 (Haw. 2002) ..............................................................................13

## OTHER AUTHORITIES

11 U.S.C. § 105...............................................................................................passim

11 U.S.C. § 362...............................................................................................passim

11 U.S.C. § 1519..................................................................................................20

11 U.S.C. § 1521..................................................................................................20

28 U.S.C. § 1334..................................................................................................16

28 U.S.C. § 1452..................................................................................................12

49 U.S.C. § 30120................................................................................................25

Hawai'i Revised Statutes Chapter 480 ........................................................ 3, 13

Hawai'i Revised Statutes Chapter 487 ...............................................................3

New Mexico's Unfair Practices Act (the "UPA"), N.M. Stat. Ann. §§ 57-12-1 *et seq.*.........8, 14

Virgin Islands' Consumer Protection Law, 12A V.I.C. § 101 *et seq.* ...................................6, 14

Virgin Islands' Consumer Fraud and Deceptive Business Practices Act,
12A V.I.C. § 301 *et seq.*....................................................................................6, 13, 14

Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO"),
14 V.I.C. § 601 *et seq.* ........................................................................................6, 14

Haw. Cir. Ct. R. 12 ..................................................................................................................... 17

## NATURE AND STAGE OF THE PROCEEDING

On July 13, 2017, the plaintiff debtors-in-possession (the "Debtors") commenced this action against various defendants, including three domestic governmental units:  the State of Hawai'i, by its Office of Consumer Protection ("Hawai'i"); the Government of the United States Virgin Islands (the "USVI"); and the State of New Mexico *ex rel.* Hector Balderas, Attorney General ("New Mexico," and collectively with Hawai'i and the USVI, the "States").

On that same day, the Debtors moved for a preliminary injunction (a "PI") to prohibit the States from continuing to prosecute civil law enforcement actions (the "State Actions") against debtor TK Holdings, Inc. ("TKH"), non-debtor affiliate Takata Corporation ("Parent") and various automobile vehicle manufacturers financially supporting the Debtors' operations during their chapter 11 cases (the "Consenting OEMs").  The States oppose the Debtors' PI motion (the "Motion") for the reasons set forth below.

## SUMMARY OF ARGUMENT

1.    The State Actions are exempt from the automatic stay and therefore cannot be enjoined by the Debtors because the State Actions do not seek control over or severely threaten the estate's assets.  Nor can the exempt State Actions be enjoined as a matter of law using section 105 of the Bankruptcy Code because the use of section 105 in this instance would not carry out the provisions of the Bankruptcy Code and be contrary to its express provisions, structure and intent.

2.    The Debtors cannot satisfy any of the four elements for a PI against the States. Any distraction to management or litigation expenses are insufficient to constitute irreparable harm; the Debtors cannot satisfy the appropriate likelihood of success inquiry; the equities favor the States because their interest in deterrence of unfair or deceptive practices cannot be

1

understated; and the public interest in road and highway safety strongly favors the enforcement of the States' police power.

3.      There is no basis to enjoin the State Actions against Parent or the Consenting OEMs. The Consenting OEMs do not share an identity of interest with TKH, and the handful of State Actions against the Consenting OEMs would have no material effect on any sale or reorganization. Application of the four injunction elements leads to the inescapable conclusion that this Court should deny any injunction of the State Actions against the Consenting OEMs.

## STATEMENT OF FACTS

On June 25, 2017 (the "Petition Date"), the Debtors commenced these chapter 11 cases. The stated purpose of the cases is to consummate a global sale transaction of the Debtors' assets and operations to Key Safety Systems Inc. (the "Sale Transaction") on or before February 27, 2018, which is the stated deadline in Parent's plea agreement with the Department of Justice (the "DOJ") for payment of $850 million in restitution to the OEMs. Declaration of Scott E. Caudill in Support of Debtors' Chapter 11 Petitions and First Day Relief ¶ 86 (D.I. 19) ("First-Day Decl.") The Debtors' stated concern is that, if the Sale Transaction is not completed by March 4, 2018, the DOJ may withdraw the plea agreement and pursue criminal charges and penalties above and beyond what was agreed in the plea agreement.[1]  Id. ¶ 13.

## A.      Vehicles in the HAH Region Are Top Priority.

As set forth in NHTSA's Coordinated Remedy Order, dated November 3, 2015 (annexed as Exhibit A hereto), TKH and certain OEMs, at NHTSA's urging, agreed on June 10, 2014, to conduct various field actions in Florida, Hawai'i, Puerto Rico and the USVI where high absolute

---

[1]  DOJ's potential pursuit of further criminal charges and penalties relating to conduct occurring before the Petition Date would be exempt from the automatic stay under section 362(b)(1) of the Bankruptcy Code.

humidity ("HAH") and high temperatures pose a heightened safety risk. *Id.* at 4. The Coordinated Remedy Order later defines the HAH region to include Hawai'i and the USVI. *Id.* at 5 n.8. "Since the propensity for rupture increases with the age of the inflator, and increases even more when the vehicle has been exposed to consistent long-term HAH conditions, the risk for injurious or lethal rupture increases with each passing day." *Id.* at 13.

In prioritizing the airbag recall, NHTSA created four priority groups of vehicles, with Priority Group 1 having "the highest risk of rupture and thus the highest risk of injury or death to the vehicle occupants." *Id.* at 16. Priority Group 1 vehicles (a) are model year 2008 or earlier, (b) were sold or ever registered in the HAH region and (c) have a recalled driver-side inflator. *Id.*; *see also id.* Annex A (listing vehicle models by priority groups based on sale or registration in HAH region).

**B.    The State Actions**

    **1.    The Two Hawai'i Actions**

Hawai'i has filed two civil law enforcement actions in Hawai'i state court relating to the explosion hazard presented by Takata brand motor vehicle airbags. Both actions assert that the defendants, with respect to their use, marketing, sale, distribution and other activities relating to Takata airbags, engaged in unfair or deceptive acts or practices in violation of Hawai'i Revised Statutes Chapter 480, Hawai'i's consumer protection statute, Chapter 487, and other applicable Hawai'i law. Hawai'i not only sought injunctive relief from violations of law but also to compel the defendants to inform Hawai'i residents about potential hazards and repair options for recalled Takata airbags. Hawai'i also sought from all defendants civil penalties, restitution and disgorgement.

3

### a.    The First HI Action

The first action, filed on May 13, 2016 (the "First HI Action"), named as defendants TKH, Parent, three Honda entities and Doe Defendants 1-100. A copy of the complaint is annexed as Exhibit B hereto. TKH and Parent moved to dismiss or stay on various grounds, including alleged lack of personal jurisdiction, failure to plead a fraud claim under Rule 9 and lack of standing because TKH and Parent did not sell products directly to Hawai'i consumers. The Honda entities filed a separate motion to stay and asked alternatively that Hawai'i be required to coordinate its discovery to the greatest extent possible with discovery in *In re Takata Airbag Products Liability Litigation*, MDL No. 2599 (S.D. Fla.) (the "MDL"). Hawai'i opposed the motions but affirmatively committed to coordinate discovery where it made sense.

The state court denied the motions to dismiss and stay from the bench on October 31, 2016, and thereafter denied a motion by TKH and Parent for leave to file an interlocutory appeal regarding that denial. The court also concluded that some degree of coordination with the MDL discovery would be appropriate where practicable and ordered the parties to meet and confer to discuss the formulation of a protocol for such coordination.

Although the parties met and conferred about a discovery coordination protocol, no agreement was reached. Nevertheless, Hawai'i has participated in every MDL deposition in which one of the defendants has asked Hawai'i to participate. Hawai'i expects to participate in the six MDL depositions that are currently scheduled over the summer. Hawai'i has not noticed a single non-MDL deposition in the fourteen months that the action has been pending. Also, to date, TKH and Parent have produced documents to Hawai'i of 40 custodians produced in the MDL.

4

The one area where Hawai'i has sought independent discovery is of documents from one key custodian, Parent's CEO Shigehisa Takada, grandson of the company's founder.  On April 19, 2017, Parent filed a motion for protective order to preclude Hawai'i from obtaining Takada's documents.  The state court denied the motion from the bench on May 19, 2017, expressly finding that the records sought were relevant and that Parent had failed to meet its burden of establishing that the production would be unduly burdensome or expensive, which Parent's attorney had conceded.  On July 14, 2017, the court entered the formal order denying the motion (annexed as Exhibit C hereto).

Long after answering the complaint, on June 16, 2017 -- shortly before the Petition Date -- the Honda entities filed cross claims against TKH and Parent, alleging indemnity, fraudulent concealment and misrepresentation.  Compl. ¶ 30.  Honda's alleged indemnity agreement is dated October 30, 2007, long after the date that many of its vehicles had been manufactured with Takata airbags.  See Tsekerides Decl. at 2 and Ex. E.

**b.    The Second HI Action**

After conducting discovery for about a year, Hawai'i filed a second similar enforcement action on May 23, 2017 (the "Second HI Action"), against various Toyota, Nissan and Ford entities and additional Doe Defendants 1-100.  Compl. ¶ 31.  The Second HI Action was brought against these particular automakers not merely because they installed Takata airbags in their motor vehicles but because of evidence specific to each of them that they knew or should have known -- but did not disclose to consumers -- that Takata airbags were prone to rupture.

Before service of the complaint on even a single defendant, all the U.S. defendants filed their answers and asserted third-party complaints against TKH and Parent.  Ford, Toyota and

Nissan filed their answers and third-party complaints on June 19, 21 and 22, 2017, respectively, less than one week before the Petition Date.

### 2. The Two USVI Actions

The USVI has filed two civil law enforcement actions in Superior Court in the Virgin Islands relating to the explosion hazard presented by Takata brand motor vehicle airbags. Both actions assert that the defendants, with respect to their use, marketing, sale, distribution, and other activities relating to Takata airbags, engaged in unfair or deceptive acts or practices in violation of Virgin Islands' Consumer Protection Law, 12A V.I.C. § 101, and Consumer Fraud and Deceptive Business Practices Act, 12A V.I.C. § 304. The action against the Takata and the Honda entities (described below) also alleges that these defendants engaged in violations of the Virgin Islands Criminally Influenced and Corrupt Organizations Act ("CICO"), 14 V.I.C. § 605 and created a public nuisance. The USVI sought not only injunctive relief from violations of law but also to compel the Takata and Honda entities to engage in a robust public education effort to ensure that affected residents are aware of the potential hazards posed by Takata airbags and the availability of repairs. The USVI also sought from all defendants civil penalties, restitution and disgorgement.

### a. The First USVI Action

The first action, filed on May 25, 2016 (the "First USVI Action"), named as defendants TKH, Parent and three Honda entities. A copy of the complaint is annexed as Exhibit D hereto. On the same day, the USVI moved for a PI against TKH and sought to require TKH to deposit money into an escrow account pending resolution of the litigation.

Prior to hearing the PI motion, the Superior Court issued a 113 page ruling denying the motion to dismiss of TKH and Parent asserting lack of personal jurisdiction and failure to state a

claim. Then, after full briefing by the parties, the Superior Court conducted an evidentiary hearing on the PI motion on June 19, 2017, roughly one week before the Petition Date. The Superior Court denied the motion without prejudice, but invited the USVI to submit supplemental briefing to address gaps in the evidentiary record.

A few days later, on Friday, June 23 the USVI filed briefing to provide the requested factual evidence. After the supplemental evidence was filed, the Court ordered a second PI hearing for Monday, June 26. Over the weekend, news reports indicated that TKH would file for bankruptcy as early as Sunday, June 25. The Court asked that all parties participate on an emergency call on Saturday, June 24. According to the Supplemental Findings of Fact and Conclusions of Law issued by the Superior Court on Sunday morning (the "Supp. Findings") (annexed as Exhibit E hereto), numerous attempts by the USVI to reach counsel for TKH by telephone, email and text went unanswered.

On the morning of the Petition Date -- but well before the petitions were filed that evening -- the Superior Court entered an Order granting the PI motion (the "PI Order") and directing TKH to deposit $8,064,707 immediately into an escrow account. Of particular note, the Superior Court found that the rate of repair for affected vehicles in the Virgin Islands was significantly lower than the national repair rate. Supp. Findings at 2. Also, $1 million of the funds to be deposited was for the public education outreach to consumers. *Id.* at 3. TKH chose not to comply with the PI Order even though TKH was clearly aware of the PI Order and its obligation thereunder. *See* First-Day Decl. ¶ 73 ("This payment has not been made.").

In the meantime, long after answering the complaint -- as with the First HI Action -- on June 15, 2017, the Honda entities filed cross claims against TKH and Parent on the same bases

7

as in the First HI Action. Then, on June 28, 2017, the Superior Court stayed the action *sua sponte* based on a notice of bankruptcy filing filed by TKH in that action. Compl. ¶ 33.

### b.    The Second USVI Action

The USVI recently commenced a second similar enforcement action on May 16, 2017, against Toyota, Nissan and Ford entities (the "Second USVI Action"). Compl. ¶ 34. As with the Second HI Action, before service of the complaint on even a single defendant, all the U.S. defendants filed their answers and asserted third-party complaints against TKH and Parent. Ford, Toyota and Nissan all filed their answers and third-party complaints on June 19, June 21 and June 22, 2017, respectively, less than one week before the Petition Date. On June 30, 2017, the Superior Court stayed the Second USVI Action *sua sponte* based on a notice of bankruptcy filing filed by TKH in that action. Compl. ¶ 34.

### 3.    The New Mexico Action

On January 20, 2017, New Mexico commenced a civil enforcement action against TKH, Parent, Honda Motor Co., Ltd., American Honda Motor Co., Inc., Ford Motor Company, Toyota Motor Corporation, Toyota Motor Sales, U.S.A, Inc., Toyota Motor Engineering and Manufacturing North America, Inc., BMW of North America, LLC, BMW Manufacturing Co., Mazda Motor Corporation, Mazda Motor of America, Inc., Fuji Heavy Industries, Ltd., Subaru of America, Inc., Mitsubishi Motors Corp., Mitsubishi Motors North America, Inc., Nissan Motor Co., Ltd., and Nissan North America, Inc. for violation of New Mexico's Unfair Practices Act (the "UPA"), N.M. Stat. Ann. §§ 57-12-1 *et seq.*, seeking statutory penalties, disgorgement, attorneys' fees and costs (the "NM Action").[2]

---

[2]    New Mexico also filed suit against Jaguar Land Rover North America, LLC, Mercedes-Benz USA, LLC, Fiat Chrysler Automobiles N.V., Ferrari North America, Inc., Volkswagen Group of America, Inc., Audi of America, LLC, General Motors Company, and General Motors LLC. New Mexico dismissed its claims against these entities without prejudice and subject to tolling agreements.

On March 30, 2017, New Mexico filed its First Amended Complaint (annexed as <u>Exhibit</u> <u>F</u> hereto). New Mexico asserts that TKH and Parent made false and misleading statements regarding the existence and extent of the defect in the Takata airbags, while the OEMs made false and misleading statements regarding the safety of their vehicles and the safety of the airbag systems within those vehicles.

All OEMs besides Fuji Heavy Industries, Ltd. and Subaru America, Inc. (collectively, "Subaru") filed answers to the First Amended Complaint in June 2017. In addition, each OEM besides Subaru, asserted cross claims against TKH and Parent, alleging indemnity, fraudulent concealment and misrepresentation, and contribution. Subaru filed a motion to dismiss, which has been fully briefed, and which is pending before the court. TKH and Parent also filed a motion to dismiss in June 2017. A case management conference is scheduled for August 23, 2017. New Mexico and the OEMs have been negotiating the entry of a protective order, and document discovery is expected to commence shortly.

## **ARGUMENT**

The Debtors seek to enjoin the States from exercising their police power, which is expressly exempt from the automatic stay under section 362(b)(4). An injunction of exempt state action is rarely granted, however, and available -- if it is available at all -- only in cases where the state action seeks physical control over estate assets or is a serious threat to the bankruptcy process. Here, the State Actions do not seek physical control over estate assets, and the potential distraction to the Debtors' senior management or increased litigation expenses are insufficient reasons to enjoin the State Actions as a serious threat to the bankruptcy process.

Moreover, a balancing of the equities and the public interest strongly supports denial of an injunction. The States have a strong interest in the deterrence of other wrongdoers from

engaging in unfair or deceptive practices. An injunction of the State Actions would undermine the States' enforcement of their laws and encourage other wrongdoers to violate state laws and then seek haven in the bankruptcy court. Moreover, there is a strong public interest in safety on roads and highways and the removal of safety hazards, particularly in the HAH regions which are considered high priority and where the danger of injurious or lethal airbag rupture is particularly great.

The Motion also seeks to enjoin all litigation against the Consenting OEMs, recipients of the DOJ restitution payment owed by Parent. This is just another step by the Consenting OEMs to use these chapter 11 cases to their advantage. First, by means of the Accommodation Agreement, the Consenting OEMs have sought to elevate their contingent litigation claims for indemnification to secured status and to obtain a veto over any proposed plan. Now, the Debtors seek a stay of all litigation against them relating to these cases.

The Consenting OEMs, however, are not victims in this Takata airbag fiasco; rather, based on the allegations or discovery in the State Actions, the named defendant OEMs -- all of which are Consenting OEMs -- were aware of the dangers of the Takata airbags or received substantial notice of these dangers and nevertheless continued to use them in the manufacture of their vehicles and to conceal and misrepresent the dangers to consumers and regulators. The Consenting OEMs, in other words, are not tangential to the State Actions, but are the focus of them.

The Court need not decide the merits of the States' allegations because an injunction of the State Actions in favor of Parent or the Consenting OEMs is clearly not appropriate. As rare is the case that permits exempt state action against a debtor to be enjoined, there simply is no precedent to enjoin exempt state action against non-debtors. Moreover, since the State Actions

10

allege that the Consenting OEMs engaged in unfair or deceptive trade practices in violation of state consumer protection laws (and in violation of CICO in the USVI actions) in addition to the Debtors' unlawful conduct, a judgment against them does not equate to a judgment against TKH. Nor have the Debtors made any showing that any forthcoming events, with respect to the Consenting OEMs, will distract the Debtors' management.

The Motion should be denied in its entirety as against the States.

## I.    The Debtors Cannot Satisfy the Standard To Enjoin Actions Against TKH That Are Exempt from the Automatic Stay.

The Debtors do not concede that the State Actions are exempt from the automatic stay, but they do not argue the issue because they erroneously presume that an injunction under section 105 is nevertheless available. Debtors' Br. at 15 n.13. However, the applicability of section 362(b)(4), which exempts police or regulatory actions by a governmental unit from the automatic stay, guides the analysis whether an injunction under section 105 is available at all. Accordingly, the Court must first consider whether the State Actions are exempt from the automatic stay under section 362(b)(4).

### A.    The State Actions Are Exempt from the Automatic Stay.

Section 362(b)(4) of the Bankruptcy Code provides that there is no stay of "an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power." As explained by the Third Circuit, the exception discourages debtors from seeking bankruptcy protection to avoid "impending governmental efforts to invoke the governmental police powers to enjoin or deter ongoing debtor conduct which would seriously threaten the public safety and welfare (*e.g.,* environmental and/or consumer protection regulations)." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011); *see also In re Berg*, 230 F.3d 1165, 1167 (9th Cir. 2000) ("This exemption prevents the bankruptcy court from

11

becoming a haven for wrongdoers.") (internal quotations and alteration omitted). Indeed,

"'where a governmental unit is suing a debtor to prevent or stop violation of fraud,

environmental protection, consumer protection, safety, or similar police or regulatory laws, or

attempting to fix damages for violation of such a law, the action or proceeding is not stayed

under the automatic stay.'" *United States v. Nicolet, Inc.*, 857 F.2d 202, 208 (3d Cir. 1988)

(quoting S. Rep. No. 95-989, at 52 (1978) and H.R. Rep. No. 595, at 343, *reprinted in* 1978

U.S.C.C.A.N. 5838, 6299).[3]

To determine whether section 362(b)(4) exempts this litigation from the automatic stay,

this Court applies two overlapping inquiries: the pecuniary purpose test and the public policy

test. *Nortel Networks,* 669 F.3d at 139. As explained by the Third Circuit:

> The pecuniary purpose test asks whether the government primarily seeks to
> protect a pecuniary governmental interest in the debtor's property, as
> opposed to protecting the public safety and health. The public policy test
> asks whether the government is effectuating public policy rather than
> adjudicating private rights. If the purpose of the law is to promote public
> safety and welfare or to effectuate public policy, then the exception to the
> automatic stay applies. If, on the other hand, the purpose of the law is to
> protect the government's pecuniary interest in the debtor's property or
> primarily to adjudicate private rights, then the exception is inapplicable.

*Id.* at 139-40. The inquiry is objective; the court focuses on the purpose of the law that the

governmental unit seeks to enforce, not on the governmental unit's intent in enforcing the law in

a particular case. *Safety-Kleen Inc. (Pinewood) v. Wyche,* 274 F.3d 846, 865 (4th Cir. 2001); *In

re GM LLC Ignition Switch Litig.,* 69 F. Supp. 3d 404, 411 (S.D.N.Y. 2014). More specifically,

the court looks at the *primary* purpose of the law that the state is attempting to enforce. *Safety-*

---

[3] The police-power exception not only prevents the use of the automatic stay to delay state action against wrongdoers but also prevents them from removing to the bankruptcy court litigation filed by governmental units to enforce their police and regulatory authority. *See* 28 U.S.C. § 1452(a); *City and County of San Francisco v. PG & E Corp.,* 433 F.3d 1115, 1123 (9th Cir. 2006) (explaining that the police and regulatory power exceptions in the automatic stay and removal contexts are virtually identical and should be viewed as coextensive).

*Kleen*, 274 F.3d at 865.  The fact that one purpose of the law may touch on a state's pecuniary interest will not defeat exemption under section 362(b)(4).  *Id.*; *see also In re Universal Life Church, Inc.*, 128 F.3d 1294, 1299 (9th Cir. 1997) ("Only if the action is pursued solely to advance the pecuniary interests of the governmental unit will the automatic stay bar it.").

Here, none of the statutes sought to be enforced by the States in the State Actions in which TKH is a named defendant (the First HI Action, the First USVI Action and the NM Action, collectively, the "Three TKH Actions") has the primary purpose of adjudicating private rights or advancing the pecuniary interests of the States.  Instead, the Three TKH Actions are the quintessential "consumer protection" government enforcement actions contemplated by the police power exemption to the automatic stay.  The State Actions seek to protect the public welfare by carrying out the public policy of the States' consumer protection laws:  to stop, punish and deter unfair or deceptive trade practices.  *See In re First Alliance Mortg. Corp.*, 264 B.R. 634, 659 (C.D. Cal. 2001) ("[G]overnmental units are entitled to make the choice that, over time, similarly situated borrowers and consumers benefit more when companies do not violate the law in part because they know that bankruptcy will not provide a way out when their wrongs are discovered.").

The First HI Action is based on HRS Chapter 480, which provides "a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest businessmen." *Zanakis-Pico v. Cutter Dodge, Inc.*, 47 P.3d 1222, 1230 (Haw. 2002).  Likewise, the First USVI Action, based on the USVI's consumer protection and deceptive business practices statutes, seeks to "protect the consuming public from deceptive and unfair acts or practices in the conduct of any trade or commerce." 12A V.I.C. § 302.  A government enforcement action under the statutes can seek to enjoin the misconduct as well as

13

punish and deter wrongdoers by imposing civil penalties, disgorgement and restitution. *Id.* §§ 104, 328. The First USVI Action also alleges that TKH engaged in violations of CICO, which is to "curtail criminal activity and lessen its economic and political power in the Territory of the Virgin Islands by establishing new penal prohibitions and providing to law enforcement … new civil sanctions and remedies." 14 V.I.C. § 602.

The NM Action is based on New Mexico's UPA which expressly states that, when enforced by the attorney general, its purpose is the protection of the "public interest." N.M. Stat. Ann. § 57-12-8. Courts have likewise confirmed that the legislative purpose of the UPA is the protection of consumers. *See Carl Kelley Constr. LLC v. Danco Techs.*, 656 F. Supp. 2d 1323, 1339 (D.N.M. 2009) ("[T]he policy behind the UPA is to protect New Mexico consumers"); *Truong v. Allstate Ins. Co.*, 182 P.3d 814, 827 (N.M. Ct. App. 2008) ("A sweeping rule would undercut the broader policy of the UPA, which is to protect consumers."), *rev'd on other grounds*, 227 P.3d 73 (N.M. 2010).

Thus, each of the Three TKH Actions seeks civil law enforcement of state statutes to address TKH's unfair or deceptive practices against consumers and seeks to promote public safety and welfare by enjoining and deterring such practices through civil penalties and disgorgement. Hawai'i and the USVI also seek injunctive relief to educate state residents about exploding Takata airbags and repair options and restitution for residents who have been injured by explosions. The States' efforts to protect public safety and welfare by effectuating public policy to enjoin and deter unfair or deceptive trade practices are exempt from the automatic stay. *See Nicolet*, 857 F.2d at 210 (emphasizing the statute's deterrence element in concluding that it is plain that the action is exempt from the automatic stay).

14

Courts have consistently held that state enforcement actions seeking injunctive relief, civil penalties and disgorgement are exempt from the automatic stay. *See, e.g., PG & E Corp.*, 433 F.3d at 1124 (noting the parties' agreement that claims for injunctive relief and civil penalties fall within the police power exception); *GM LLC Ignition Switch Litig.*, 69 F. Supp. 3d at 412 (concluding that state enforcement action seeking injunctive relief and civil penalties fits within the police power exception because action was designed to protect the public and not to benefit private parties); *First Alliance*, 264 B.R. at 649 (holding that the regulatory and police powers exception permits governmental action that seeks the imposition of fines, damages of disgorgement to punish wrongful conduct).

Restitution claims are also exempt from the automatic stay because the States will not receive any pecuniary advantage. *See PG & E Corp.*, 433 F.3d at 1124-25; *First Alliance*, 264 B.R. at 650. Moreover, there is no meaningful distinction between governmental restitution claims and governmental actions seeking reimbursement of back wages; both claims are exempt from the automatic stay. *First Alliance*, 264 B.R. at 651; *see also Nicolet*, 857 F.2d at 209 (noting that automatic stay does not bar EEOC suits for back pay).

Accordingly, it is clear that the State Actions come within the section 362(b)(4) exemption to the automatic stay.

**B.    Any Injunction of Exempt State Action Must Clear a Very High Hurdle.**

The Debtors rely primarily on thirty-three year old Third Circuit dicta as authority for its contention that this Court can enjoin state enforcement action that is exempt from the automatic stay. *See Penn Terra Ltd. v. Department of Envtl. Res.*, 733 F.2d 267, 273 (3d Cir. 1984). Still, a closer look at *Penn Terra* reveals that a hypothetical injunction to enjoin exempt state action would be an extraordinary remedy, by noting that, "***in some individual situations***, the exercise of

15

State power, even for the protection of the public health and safety, may run ***so contrary to the policy of the Bankruptcy Code*** that it should not be permitted." *Id.* (emphasis added).

Although neither *Penn Terra* nor subsequent Third Circuit decisions delineate the circumstances in which enforcement of the police power would be "so contrary to the policy of the Bankruptcy Code," two district courts have construed *Penn Terra*'s language to require that the state action be in serious conflict with the Bankruptcy Code or be a serious threat to the bankruptcy process. *See First Alliance*, 264 B.R. at 654 (reversing bankruptcy court injunction); *In re Brennan*, 198 B.R. 445, 450 (D.N.J. 1996) (same).

Both courts believed that an injunction might be appropriate in the instance where state action seeks physical control over the estate's assets, in conflict with the bankruptcy court's exclusive jurisdiction over estate assets. *First Alliance*, 264 B.R. at 655; *Brennan*, 198 B.R. at 451; *see also Nicolet*, 857 F.2d at 209 (explaining that the "paradigm" for impermissible enforcement action is when the governmental unit seeks to seize the debtor's property); *In re Fibertower Network Serv. Corp.*, 482 B.R. 169, 187 (Bankr. N.D. Tex. 2012) (cited by Debtors) (enjoining FCC action to terminate licenses because it would cause debtors to lose access to cash collateral); *In re Neuman*, 71 B.R. 567, 572 (S.D.N.Y. 1987) (also cited by Debtors) (enjoining state action addressing control of assets by chapter 11 trustee).[4]

It is quite clear in these cases that none of the State Actions seek to exert physical control over estate assets. When state action is "in its infancy and any judgment against the debtor is several years in the future," the action "does not seek control over the assets of the estate." *Brennan*, 198 B.R. at 450. Here, the First HI Action is merely in the fact discovery phase, and

---

[4] It is questionable whether section 105 is the correct basis for such an injunction. A bankruptcy court has exclusive jurisdiction over estate assets pursuant to 28 U.S.C. § 1334(e), and in the event that state action sought physical control over estate assets, the court would have inherent authority to issue an injunction in aid of its jurisdiction.

no pretrial statement has been filed. No trial date can be set until a pretrial statement has been filed, *see* Haw. Cir. Ct. R. 12(b)-(c), and when the state court ultimately sets a trial date, the date is ordinarily at least one year in the future. The NM Action and the First USVI Action have not even entered discovery, with the First USVI Action being presently stayed as a result of the Debtors' notice of bankruptcy filing. Although the PI Order in the First USVI Action ordered TKH to deposit $8 million into an escrow account prior to the Petition Date (which the Debtors failed to do), the Superior Court has now stayed those proceedings, and the USVI does not intend to seek any relief from that court with respect to the PI Order. Accordingly, the State Actions represent no conflict to this Court's control over the estate assets.[5]

The Debtors also rely on *NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695 (8th Cir. 1985), for authority that bankruptcy courts can enjoin regulatory action. That case is inapposite because the enjoined regulatory action did not implicate the automatic stay or the police power exception. Instead, the regulatory action arose from the debtor's post-petition rejection of collective bargaining agreements. *Id.* at 696. The Eighth Circuit affirmed the use of a section 105 injunction to enjoin the NLRB from hearing unfair labor practice charges arising from the debtor's use of section 1113 of the Bankruptcy Code. *Id.* at 701; *see also Brennan*, 198 B.R. at 451 (noting that a state regulatory action may be enjoined when the state pursues a claim "that would effectively contravene a specific bankruptcy code section") (citing *Superior Forwarding*).

---

[5] The Superior Court found that the money to be escrowed was obtained through fraud, Supp. Findings at 3, and therefore would not be part of the estate. *See, e.g., In re Teltronics, Ltd.*, 649 F.2d 1236, 1239 (7th Cir. 1981) ("[I]t is settled that property obtained by fraud of the bankrupt is not part of the bankrupt's estate."). The USVI reserves all rights to seek relief from this Court concerning the funds that should have been escrowed.

*Superior Forwarding* therefore does not address the propriety of a section 105 injunction of state action exempt under section 362(b)(4).[6]

Accordingly, the Debtors fail to offer any authority where a court enjoined state action exempt from the automatic stay, other than in the instance where the state action seeks to exercise physical control over estate assets. Since that factual scenario is not present in this case, the Motion for a PI in favor of TKH should be denied.

### C.    Section 105 Cannot Be Used To Halt Exempt State Actions.

Notwithstanding *Penn Terra*'s dicta, section 105 cannot be used to enjoin the State Actions that are exempt from the automatic stay under section 362(b)(4). *See In re 1820-1838 Amsterdam Equities, Inc.*, 191 B.R. 18, 21 (S.D.N.Y. 1996) (holding that section 105 does not give authority to circumvent the exemptions to the automatic stay); *In re Compton*, 90 B.R. 798, 806-07 (N.D. Tex. 1988) (reversing injunction of exempt state action because section 105 can be used only to carry out the Bankruptcy Code's provisions); *In re STR Corp.*, 66 B.R. 49, 51 (Bankr. N.D. Ohio 1986) (holding that section 105 cannot be used "to enjoin governmental agencies from adjudicating violations of the police or regulatory laws which they enforce").[7]

These decisions are consistent with the Supreme Court's consistent message that a bankruptcy court cannot use its equitable powers in section 105 of the Bankruptcy Code to

---

[6]    Although the Debtors cite to *In re Security Gas & Oil, Inc.*, 70 B.R. 786 (Bankr. N.D. Cal. 1987), as authority for the issuance of an injunction of state action, that court did not issue any injunction, but instead dismissed the debtor's complaint. *Id.* at 797.

[7]    Other courts have not decided the issue, but have expressed skepticism whether section 105 can be used to enjoin an exempt state action. *See, e.g., In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1190 (5th Cir. 1986) (reversing injunction and stopping short of deciding whether "there will []ever be a case" where a bankruptcy court should issue a section 105 stay to enjoin state proceedings exempt from the automatic stay); *First Alliance*, 264 B.R. at 652 n.18 ("The Court notes that it has some doubts as to whether § 105 truly authorizes an injunction of an otherwise excepted regulatory or police powers action."); *In re Bankruptcy Appeal of Allegheny Health, Educ. and Research Found.*, 252 B.R. 309, 332 (W.D. Pa. 1999) ("[T]he existence of a viable exception to the automatic stay should at least *inform* the Bankruptcy Court's decision of whether to enjoin a proceeding subject to an exception recognized by section 362(b), as Congress has conducted its balance of interests with regard to exempt proceedings.").

contravene a specific Bankruptcy Code provision. *See, e.g., Law v. Siegel*, 134 S. Ct. 1188, 1194

(2014) (unanimously reversing equitable surcharge of exemption); *United States v. Noland*, 517

U.S. 535, 543 (1996) (unanimously reversing categorical subordination of administrative tax

claim); *see also Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206-07 (1988) ("[W]hatever

equitable powers remain in the bankruptcy courts must and can only be exercised within the

confines of the Bankruptcy Code.").

Nor does the text of section 105(a) support the issuance of an injunction over exempt

state action. Its first sentence provides, "[t]he court may issue any order, process or judgment

that is necessary or appropriate ***to carry out the provisions of this title***." 11 U.S.C. § 105(a)

(emphasis added). An injunction of a state enforcement action exempt under section 362(b)(4) is

not supported by the text of section 105 because such an injunction does not carry out any of the

provisions of Title 11; instead, such an injunction would be contrary to section 362(b)(4). *See

First Alliance*, 264 B.R. at 652 n.18 ("The plain language of the bankruptcy code itself certainly

does not suggest that § 105 creates an exception to the regulatory and police power exception. It

appears that the sole authority for using § 105 in this way is a few comments in the legislative

history.").

Both the Debtors and *Penn Terra* quote from the 1978 legislative history for authority

that this Court can enjoin exempt state action. The reliance on this legislative history is contrary

to Supreme Court precedent. In *Noland*, the Supreme Court unanimously refused to consider

legislative history as the impetus to allow categorical subordination of administrative tax claims.

517 U.S. at 542 ("[S]tatements in legislative history cannot be read to convert statutory leeway

for judicial development of a rule on particularized exceptions into delegated authority to revise

statutory categorization, untethered to any obligation to preserve the coherence of substantive

congressional judgments."). Likewise, section 105 should not be read to permit an injunction of the State Actions that are expressly exempt from stay under section 362(b)(4). The use of section 105 to enjoin exempt state action would be contrary to a specific Bankruptcy Code provision and would not carry out any of the Bankruptcy Code' other provisions.

Chapter 15 supports this conclusion because it prohibits an injunction of exempt state action against a party to a recognized foreign proceeding. The Debtors have stated that they intend to seek recognition under chapter 15 of the Japanese proceedings to which Parent is a party, although no such proceedings have yet been commenced. Debtors' Br. at 5 n.5. Chapter 15, added to the Bankruptcy Code in 2005, explicitly prohibits bankruptcy courts from enjoining "a police or regulatory act of a governmental unit" in granting relief upon recognition of a foreign proceeding. 11 U.S.C. § 1521(d); *see also id.* § 1519(d) (prohibiting such an injunction prior to a ruling on the recognition petition). Since chapter 15 expressly prevents this Court from enjoining the State Actions against Parent, this Court should not use section 105 to accomplish what another provision of the Bankruptcy Code prohibits.

## II.    The Debtors Fail To Satisfy Any of the Four Elements for an Injunction.

Application of the typical four elements to obtain an injunction require the denial of the Debtors' requested PI in favor of TKH.

### A.    The Debtors Cannot Show Irreparable Harm.

The Debtors make two primary irreparable harm arguments. First, the Debtors argue that the Debtors' senior management, particularly Scott Caudill and Ken Bowling, must remain focused on the chapter 11 cases and plan. Second, the Debtors argue that the costs of defending the State Actions will diminish the estates. Debtors' Br. at 17-18. The arguments individually or collectively fail to establish the irreparable harm necessary to enjoin the State Actions.

For their first argument, the Debtors fail to cite any supporting authority that would consider any potential distraction to management as a sufficient basis to enjoin exempt state action. *See Brennan*, 198 B.R. at 453 (holding that demands on the debtor or his professionals or disruption to effective case management do not rise to irreparable harm). This case is very different from one where a debtor requests the extension of the stay to enjoin an action against corporate officers or principals who, along with the debtor, are named defendants in the action. In contrast, the automatic stay in this case does not apply to TKH, and none of the Debtors' senior management has been named as defendants in the State Actions. Nor have any of the States sought discovery from the Debtors' senior management. Accordingly, the Debtors' argument that their senior management will be distracted by the Three TKH Actions both lacks a legal basis and is not supported by the facts.[8]

As to the Debtors' second argument, litigation expenses are an insufficient reason to enjoin exempt state action. *See EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1986) ("Congress by excepting certain actions from the automatic stay provision recognized that the debtor would likely incur litigation expenses as a result of any excepted lawsuit. *Penn Terra*, 733 F.2d at 278. Congress has therefore implicitly recognized that litigation expenses alone do not justify a stay of a proceeding."); *Dole v. Hansbrough*, 113 B.R. 96, 98 (D.D.C. 1990) (same).

*Penn Terra* explains why the estate may need to incur litigation expenses to address exempt state action:

---

[8]   Moreover, the Debtors are represented in the State Actions by Covington & Burling LLP ("Covington"), a big law firm with ample resources that has already been retained in these cases specifically to handle litigation relating to the Takata airbags (D.I. 320). Covington is well equipped to defend the State Actions on the Debtors' behalf and lessen any burden on management.

> In enacting the exceptions to section 362, Congress recognized that in some circumstances, bankruptcy policy must yield to higher priorities. Indeed, if the policy of preservation of the estate is to be invariably paramount, then one could not have exceptions to the rule. Since Congress did provide for exceptions, however, we may assume that the goal of preserving the debtor's estate is not always the dominant goal.

733 F.2d at 278; *see also First Alliance*, 264 B.R. at 653 (explaining that increased expenses from litigation on two fronts does not warrant an injunction of exempt state action because, otherwise, "the regulatory and police powers exception to the automatic stay would be, for all practical purposes, a nullity"). Here, any minimal impact that increased litigation expenses may have on the estates is justified by the higher priorities of preserving the integrity of the States' police powers. Moreover, the Debtors cannot reasonably argue or prove that the litigation expenses over the next six months to defend the Three TKH Actions would materially affect the estate, let alone represent irreparable harm. Accordingly, such expenses cannot amount to irreparable harm.

Finally, the Debtors also argue that, if the States' efforts go unchecked, other states will be encouraged to file similar actions. Debtors' Br. at 19. There is nothing to support this statement. Indeed, in the approximately fifteen months since Hawaii and the USVI commenced their lawsuits, only one other state (New Mexico) has commenced a lawsuit.

### B.    The Debtors Cannot Satisfy the Appropriate Likelihood of Success on the Merits Inquiry.

The Debtors argue that they satisfy the likelihood of success on the merits inquiry because they believe that they have a reasonable likelihood of a successful reorganization in these cases. Debtors' Br. at 16-17. It is hard to imagine that any substantial operating debtor entities would be unable to satisfy what appears to be a relatively light burden in the first 30-60 days of their chapter 11 cases. Accordingly, some courts have held that the focus of inquiry

22

should be on the likelihood of success on the merits in defending the underlying enforcement litigation. *See, e.g., Commonwealth Refining*, 805 F.2d at 1189. To that end, the Debtors have not made any argument that they will succeed on the merits of the Three TKH Actions; indeed, the courts in the First HI Action and the First USVI Action have denied motions to dismiss.

Moreover, the Debtors cannot and have not shown that the proposed global transaction will likely resolve successfully the main disputes in these cases, that is, the litigation facing the Debtors by the States and others. Although the Debtors would certainly be likely to succeed in completing the Sale Transaction in the next six months, the Debtors have demonstrated no likelihood whatsoever that any plan they may propose will be approved consensually or that it will resolve the claims of the States and other parties in interest. Simply proposing and confirming a plan using the asserted weight of the Consenting OEM claims and the control sought by the Consenting OEMs over the plan process does not meet the necessary standard.

### C.    The Equities Favor the States.

The Debtors argue that the relief requested would not prejudice the States or their residents because the relief sought by the States is largely being achieved through NHTSA or OEM action, there are remedies available for personal injury victims and a temporary delay in the State Actions is outweighed by the harm. Debtors' Br. at 20-22. Each of the Debtors' arguments is meritless.

The States are not seeking recall nor are they seeking remedies for any particular consumer or personal injury victim. The State Actions are seeking to stop, punish and deter violations of state laws prohibiting unfair or deceptive trade practices through injunctive relief as well as civil penalties, disgorgement and restitution. Further, the Debtors' argument fails to consider the States' interest in public safety and welfare. It is readily apparent that the recall

23

efforts are not reaching much of the population and that the general public remains ignorant as to the dangers of the Takata airbags and the repair options. *See, e.g.*, Supp. Findings at 2 (finding that the Virgin Islands repair rate of affected vehicles is substantially less than the national average). The public education sought by Hawai'i and the USVI would educate their residents and make the recall efforts more effective. Accordingly, the Debtors are mistaken that the relief sought by the States would largely be achieved by NHTSA or OEM action.

The Debtors' arguments also fail to focus on the harm to the States that would be caused by an inability to enforce their consumer protection laws. As discussed earlier, deterrence is a primary interest of the enforcement laws that the States are seeking to enforce in the State Actions. An injunction of the State Actions would stymie the States' efforts to deter other unsavory actors from engaging in unfair or deceptive practices. Moreover, an injunction would encourage other bad actors to engage in unfair or deceptive practices and then seek relief under the Bankruptcy Code. *See First Alliance*, 264 B.R. at 659 (explaining that a governmental unit's goals of public policy, punishment and deterrence -- difficult if not impossible to measure in dollars and cents -- are impaired when the governmental unit "loses the ability to enforce its own laws in its own forum").[9]

Accordingly, a balancing of the equities favors the States and the continuation of their enforcement actions against TKH. *See Nicolet*, 857 F.2d at 207 (explaining that the automatic stay exemption embodies Congress's recognition that state enforcement laws merit a higher priority than a debtor's right to a cease fire or creditors' rights to orderly administration of the

---

[9] *In re W.R. Grace & Co.*, 412 B.R. 657 (D. Del. 2009) (referred to the Debtors as "*W.R. Grace II*") is inapposite because the State of New Jersey's enforcement interest was undermined by its failure to file a timely proof of claim in a bankruptcy case that was eight years old.

estate); *Brennan*, 198 B.R. at 451-52 (holding that a lack of a breathing spell does not constitute a serious conflict with the bankruptcy process).

### D.    The Public Interest Favors Enforcement of the States' Police Power.

The Debtors argue that the public interest favors an injunction because it will assist the Debtors' reorganization efforts. Debtors' Br. at 22-23. Although that argument might have some sway in a case involving only private litigants, in this case, the litigants are the States and their enforcement actions are exempt from the automatic stay, which means, by definition, they are in the public interest.

Moreover, the States have an important interest in protecting their residents from defectively explosive airbags by educating them to the dangers and the availability of repairs. *See Dixon v. Love*, 431 U.S. 105, 114 (1977) (emphasizing "the important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard"). This public interest is particularly strong in the HAH region most affected by the defective Takata airbags. *See* Coordinated Remedy Order at 13 ("Since the propensity for rupture increases with the age of the inflator, and increases even more when the vehicle has been exposed to consistent long-term HAH conditions, the risk for injurious or lethal rupture increases with each passing day."). Thus, the States cannot stand by idly while their laws aimed at curbing unfair, deceptive or fraudulent practices in their jurisdictions are flouted and the danger represented by the Takata airbags remains a threat to their residents, particularly in the HAH region.

The Debtors argue that the interest in public safety actually supports an injunction because, if the Debtors cannot restructure successfully, they will be unable to meet repair demands. Debtors' Br. at 24. Even if the States' relatively modest actions meant that the Debtors could not restructure -- which the Debtors have failed to show -- the Debtors fail to

25

mention that it is the OEMs' obligation under federal law to repair their vehicles that have defective Takata airbags. *See* 49 U.S.C. § 30120(a)(1) ("[T]he manufacturer of the defective or noncomplying motor vehicle or replacement equipment shall remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy."). Therefore, regardless what happens to the Debtors, the OEMs still have an obligation to repair their vehicles that have defective airbags.

The Debtors also argue that, based on its market share, their liquidation would have an adverse effect on the automobile market and its ability to provide replacement airbags. Debtors' Br. at 24. A liquidation of the Debtors may adversely affect the automobile market, but there is little if any likelihood that the Debtors will be forced to liquidate prior to a sale of substantially all their assets. Moreover, as the NHTSA found, for the month of October 2015, Takata's production of replacement inflators comprised only 30% of total replacement inflators produced, and that percentage may drop over time. Coordinated Remedy Order at 14. The Debtors' parade of horribles, therefore, both is unlikely to occur and unlikely to cause any catastrophic impact on the worldwide automobile market.

Accordingly, the public interest strongly favors the States' efforts to educate their residents and to provide for safety to them on roads and highways.

## III.    There Is No Basis To Enjoin the State Actions Against the Non-Debtors.

### A.    There Is No Legal Basis for a Non-Debtor Injunction.

As an initial matter, should the Court deny the requested injunction against the States in favor of TKH, then there is no legal basis to enjoin the States in favor of Parent or the Consenting OEMs since the Debtors are requesting an extension of the TKH injunction to them. *See McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510-11 (3d Cir. 1997) (explaining the

26

bases for extending the protections of the automatic stay to non-debtors and holding that stay was properly extended to a third party because the debtor was the real party in interest).

Moreover, although there may be a few cases with highly particularized facts which have enjoined state action exempt from the automatic stay, the Debtors have not cited any authority -- and the States are aware of none -- that would permit an injunction of exempt state enforcement action against non-debtors. *See Brennan*, 198 B.R. at 453 (holding that bankruptcy court abused discretion by extending stay to non-debtors).

Indeed, the use of section 105 to enjoin exempt state action against non-debtors could possibly be sustained only when the state action seeks physical control over the estate assets or severely threatens the integrity of the bankruptcy process. *See* authorities cited *supra* Part I.B. The claims against the Consenting OEMs in the State Actions certainly do not seek physical control of estate assets, and any potential involvement required of the Debtors in the States' enforcement of their claims against Parent or the Consenting OEMs would be tangential and only minimally burdensome.

Nor do the arguments raised by the Debtors with respect to the Consenting OEMs apply to the States if the State Actions against TKH are not stayed. The Debtors' argument that the Consenting OEMs have an identity of interests with the Debtors is irrelevant if the State Actions against TKH are not enjoined. Likewise, the risk of prejudice from collateral estoppel evaporates if the State Actions against TKH are not enjoined  In sum, there is no basis to enjoin the State Actions against Parent and the Consenting OEMs if the State Actions are not enjoined against TKH.

27

**B.    The Consenting OEMs Do Not Share an Identity of Interest with TKH.**

The Debtors are mistaken that the Consenting OEMs share an identity of interest with

TKH. *See* Debtors' Br. at 33-34. An identity of interests means that a judgment against the

Consenting OEMs in the State Actions would in effect be a judgment against TKH. *See*

*McCartney*, 106 F.3d at 510 (requiring "such an identity between the debtor and third-party

defendant that the debtor may be said to be the real party defendant and that a judgment against

the third-party defendant will in effect be a judgment against the debtor") (internal quotations

omitted).

A judgment against the Consenting OEMs would not require a judgment against TKH in

the State Actions. Although the subject matter of the conduct are defective Takata airbags, the

State Actions allege that the OEMs engaged in unfair or deceptive trade practices in violation of

state consumer protection laws (and engaged in violations of CICO in the USVI actions) in

addition to the unlawful conduct of the Debtors. Accordingly, a judgment against them would

not require a judgment against TKH.

Nor does the existence of questionable contractual indemnity claims by the Consenting

OEMs against TKH change this result. *See In re VF Brands, Inc.*, 282 B.R. 134, 140 (Bankr. D.

Del. 2002) (refusing to enjoin third parties where potential contractual indemnity claims were

subject to defenses); *First Alliance*, 264 B.R. at 660 (discounting the hypothetical nature of the

harm to the debtor where the ability to seek indemnification from the debtor "is at best an open

question"). Here, the Consenting OEMs' contractual indemnity claims are contingent litigation

claims that are subject to defenses. For instance, Honda's asserted indemnification agreement

from October 30, 2007, could not have applied to any claims arising before that date. The

28

Consenting OEMs' contractual indemnity claims, therefore, do not give rise to an identity of interest sufficient to enjoin the State Actions.[10]

### C.    An Injunction In Favor of the Non-Debtors Does Not Satisfy the Four Necessary Elements for an Injunction.

For the reasons set forth above, *see supra* Part II, the Debtors cannot satisfy the four elements for an injunction in favor of Parent or the Consenting OEMs. Indeed, while the harm to the States and the public interest apply with equal force with respect to an injunction in favor of Parent or the Consenting OEMs, the Debtors' arguments to support an injunction are significantly weaker since the Consenting OEMs are not debtors and lack an identity of interest with TKH. Further, the State Actions against the Consenting OEMs target their unfair and deceptive practices, and it is that alleged conduct that is at issue in the State Actions with respect to the Consenting OEMs. Thus, any arguments regarding alleged distraction to the Debtors management or increased litigation expenses -- even if they could constitute irreparable harm, which they cannot, *see* supra Part II. A -- are weaker here.

### JOINDER IN OTHER ARGUMENTS

The States join in any other arguments made by the tort claimants committee and other parties opposing the Motion on the issue of a proposed third-party injunction of all litigation against the Consenting OEMs.

---

[10]   Decisions cited by the Debtors that have extended the stay to non-debtors are distinguishable because, in those cases, the litigation against the non-debtors would have had an immediate and adverse impact on the estate. *See A.H. Robbins Co. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir. 1986) (affirming stay of co-defendants because successful suits against them would reduce the debtor's insurance fund); *In re W.R. Grace & Co.*, 386 B.R. 17, 34 (Bankr. D. Del. 2008) (referred to by the Debtors as *W.R. Grace I*) (extending stay because debtors had an obligation to defend non-debtor under insurance policy).

## CONCLUSION

For the foregoing reasons, the Court should enter an Order finding that the State Actions are exempt from the automatic stay, denying the Motion in its entirety with respect to the States and granting to them such other and further relief as is just.

Dated:  August 2, 2017

MACAULEY LLC


_____/s/ Thomas G. Macauley_____
Thomas G. Macauley (No. 3411)
300 Delaware Avenue, Suite 760
Wilmington, Delaware 19801
Telephone:  (302) 656-0100

Attorneys for State of Hawai'i
and the Government of the
United States Virgin Islands



DICELLO LEVITT & CASEY LLC


_____/s/ Adam J. Levitt_____
Adam J. Levitt, Esquire
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone:  (312) 214-7900
Email:  alevitt@dlcfirm.com

Attorneys for the State of New Mexico